THE ROMAN CATHOLIC APOSTOLIC CHURCH *v.* THE PEOPLE OF PORTO RICO.

### Original Jurisdiction.

No. 10.—Decided December 15, 1906.

RIGHT OF USE—SERVITUDE.—The right of use, according to the provisions of the former Spanish Civil Code, and according to the provisions of the Revised Civil Code, constitutes a real charge, a servitude, upon a thing belonging to one for the benefit of another person to use the same or receive its fruits in so far as sufficient for the necessities of his family, constituting a limitation of the free exercise of the right of ownership of the thing encumbered, and extinguishing upon the death of the user.

ID.—POWERS AND OBLIGATIONS OF THE USER.—The powers and obligations of the user must be governed first by the stipulations of the title constituting the right, and in the absence thereof, by the provisions of section 527, *et seq.*, of the Revised Civil Code.

ID.—FULL OR ABSOLUTE OWNERSHIP.—Although the personal servitude of use is always understood to be without prejudice to rights of ownership, possession and usufruct, notwithstanding this, it cannot be successfully maintained that such a servitude is compatible with the full or absolute dominion of the owner, because this term signifying as it does the power which he has to alienate one thing to the exclusion of the other, receives all of the fruits and excludes all others from its use, none of these rights may be exercised by the

owner of a thing encumbered by the servitude of use, whether it is temporary or absolute, because as long as it exists the owner cannot sell it or freely use the same.

ID.—RIGHT OF USE IN PERPETUITY.—The plaintiff, in the case at bar, claims the right of use in perpetuity of a chapel which is the property of the defendant, for the purposes of Catholic worship, basing its action on two resoutions of the *diputación provincial,* which read as follows: ''That the chapel be devoted to Divine worship, the *diputación* to retain all its rights, and particularly those of ownership, possession and usufruct, the powers vested in it and those derived from the aforesaid rights; the second being, that it being impossible for the *diputación* to waive such reservation of rights inasmuch as a building belonging to the province was concerned, without having any intention of devoting it to any other uses, and that it would be highly pleased if the church would consecrate it to public worship.'' *Held:* that this resolution cannot be deemed to constitute a perpetual servitude of use, but only a concession revocable at any time at the pleasure of the *diputación.*

The facts are stated in the opinion.

*Mr. Hernández López,* for plaintiff.

*Messrs. Sweet, Attorney General,* and *Hartzell* and *Rodríguez Serra,* special counsel for defendant.

MR. CHIEF JUSTICE QUIÑONES delivered the opinion of the court.

This is another of the actions brought in this Supreme Court by Attorney Juan Hernández López on behalf of the Right Reverend Diocesan Bishop of the Roman Catholic Apostolic Church in this Island, against The People of Porto Rico, in accordance with the provisions of the Act of the Legislative Assembly of March 10, 1904, which conferred original jurisdiction on this Supreme Court for the trial and adjudication of all questions now existing or which may arise between the Roman Catholic Apostolic Church in Porto Rico and The People of Porto Rico, relating to certain property claimed by the Catholic Church.

The complaint as last filed by counsel for the Catholic Bishop of Porto Rico is based upon the following facts:

''1. The former *Diputación Provincial* of Porto Rico constructed with its own funds a masonry building in the *barrio* of Santurce of this city, at the place now known as Stop 19 of the electric railway between this city and Río Piedras; said building has a garden and an iron fence in front of it abutting on the so-called *Carretera Central,*

and on two sides and in the rear it is surrounded by a park or land enclosed by masonry walls along almost the entire length and breadth thereof.

"2. Upon the conclusion of said building the *Diputación Provincial* established therein a high school for boys under the charge and direction of the Reverend Jesuit Fathers, which school continued in existence for a number of years.

"3. At the same time that the *Diputación Provincial* of Porto Rico was constructing said building, to devote it, as it did, to a high school, it constructed or erected also another masonry building adjoining or annexed to said school, locating and erecting it upon the land on the left side when entering from the road, the building being situated between the main building and the masonry wall, about five meters, more or less, from the road, with absolute separation and independence between the two buildings. This building, situated to the left when entering, was built for the evident purpose of serving, solely and exclusively, for a Catholic Church or chapel, as is clearly shown and revealed by its plan, its architecture, its front, its naves, its various dependencies, and the interior and exterior arrangement of the building as a whole and in detail. This building has three doors, two side doors and one large front door, protected by a portico suitable only for a church building, and from this portico it has direct communication with the central road through a gate expressly placed and cut in the front fence for the passage of persons attending the rites and ceremonies of the Catholic Church. In the rear it also has a small door for the use of the sacristy.

"4. Upon the completion of this church or chapel it was delivered, with the intervention and approval of the Right Reverend Bishop of the Diocese of Porto Rico, to the Reverend Jesuit Fathers, who had charge of said high school, in order that said building might be consecrated, as it was, to Catholic worship. This occurred in the year 188_, and since that time and until the year 1886 said church or chapel was devoted to Catholic worship, not only for the benefit of said high school, but also for the benefit of the Catholic residents of Santurce and for the Catholic public in general.

"5. At the end of the school year which closed in 1886, the Reverend Jesuit Fathers decided to dissolve the said high school, and in pursuance of their decision they returned or delivered the said building to the *Diputación Provincial,* from which they had received it for the said educational purposes.

"6. Catholic worship in said church or chapel was not suspended on this account, but was continued under the charge of other priests

designated by the Right Reverend Bishop of the Diocese. And the Reverend Jesuit Fathers, upon their departure, stated in an official communication that they left a number of effects and articles in the said church or chapel pertaining to Catholic worship; which effects and articles, according to accompanying statement, they donated to the *Diputación Provincial* of Porto Rico, but under the express condition that, if at a future date the chapel were devoted to any profane use, such effects should revert to the parish of Santurce.

"7. The *Diputación Provincial* received this building from the hands of the Reverend Jesuit Fathers on August 20, 1886, and at a session held by the provincial commission and associates they resolved to announce in the *Official Gazette* of Porto Rico that bids for the lease of said building would be received for a period of 15 days, but without including the church or chapel.

"8. The *Diputación Provincial* leased the said building which had been occupied by the high school to the railroad company of Porto Rico, with its garden and park, but excluding from the contract of lease the above-mentioned church or chapel, and the annexed land, with free and open access for the purposes of Catholic worship to which it was consecrated.

"9. At a special session of the provincial committee and associate deputies of the *Diputación Provincial* of Porto Rico, held on August 27, 1886, the motion of Pablo Ubarri, proposing that the Right Reverend Diocesan Bishop be requested to establish a chapel of ease in the one next to the building occupied by the college of San Ignacio of Santurce was considered. Mr. Ubarri stated that said prelate had agreed to the foundation of said chapel of ease [dependent church for the convenience of parishioners], and that while the proceedings which have to be instituted for the purpose were pending he would appoint a priest to said chapel, the residents of the *barrio* of Santurce to pay the emoluments by subscription, which had already been started in an acceptable manner. The provincial committee and associates, taking into consideration the statement made by Mr. Ubarri, '*Resolved to approve the motion: That the chapel be devoted to Divine worship,* this deputation to retain all its rights and especially those of ownership, possession and usufruct, the powers vested in it, and those derived from the aforesaid right which shall at no time be impaired *by the concession this day made to the bishop of this diocese.*'

"10. This resolution, as all resolutions of the provincial committee and associates, was of a provincial character subject to the approval, disapproval or amendment of the full *Diputación Provincial,* in its semiannual sessions, as provided by its organic law.

"The *Diputación Provincial* in full having met on November 2, 1886, the following particular appears in the minutes of the session held on that day:

" 'The proceedings relating to the foundation of a chapel of ease in the chapel next to the building which was occupied by the College of San Ignacio of Santurce was taken up. The resolution of the committee and associates of August 27 last, *agreeing that said chapel be devoted to Divine worship,* but with a reservation that this *diputación* should retain all of its rights, and especially those of ownership, possession and usufruct, the powers vested in it and those derived from the aforesaid right, was read, as was a communication from the Right Reverend Diocesan Bishop to the effect that according to Spanish eccleciastical discipline said chapel could not be devoted to public worship with the reservation of rights made by the corporation. A number of the deputies spoke, and it was resolved to inform the Right Reverend Bishop that, as it was the wish of the corporation, *that said chapel be devoted to public worship,* and it being impossible on the other hand, for it to waive such reservation of rights, inasmuch as a building belonging to the province was concerned, *without having any intention of devoting it to other uses, it would be highly pleased if the bishop, conciliating the interests and rights of the church with those of this diputación,* would consecrate it to public worship.'

"This resolution of the *Diputación Provincial* in full was ordered by the Governor and Captain General of this Island of Porto Rico to be complied with and executed.

"11. In accordance with this wish, with this intention, with this resolution, of a final definite and absolute character, of the *Diputación Provincial* of Porto Rico, by virtue of which the Roman Catholic Apostolic Church was granted the right of *use* of said church or chapel without limitation of time, or perpetually, for the purpose of devoting and consecrating it to Divine worship, the Right Reverend Bishop of this diocese proceeded to constitute, and did constitute, a chapel of ease in said building, which by such act became definitely dedicated and consecrated to Catholic worship.

"12. This occurred in 1886, and matters continued thus until 1895, when the contract of lease above mentioned of the building which was formerly the College of San Ignacio, with the railway company of Porto Rico having terminated, the *Diputación Provincial* resolved to establish, and did establish, another high school in said building, but placing this second school in charge of the Reverend Pious School Fathers (*Reverendos Padres Escolapios*).

"13. Said high school having been established under the charge

of said Pious School Fathers, the Right Reverend Bishop of the Diocese ordered that said priests of the Catholic Church should also assume charge of Divine worship in the said church or chapel for the benefit of the faithful Catholics in general, and in particular of the boarding students of said high school.

"14. Upon the occupation of this Island by the Army of the United States a proclamation was issued on July 18, 1898, by President William McKinley, which provided, among other things, for the protection of all churches and buildings devoted to religious worship, and to the arts and sciences, as well as school buildings.

"15. Under date of November 29, 1898, the commanding general of the army of occupation issued a general order, No. 17, abolishing the corporation known under the name of *Diputación Provincial,* and providing that its responsibilities and powers should be distributed among the various departments of the Colonial Government of Porto Rico, then existing, and particularly entrusting to the Secretary of Finance the existing assets and liabilities of the *Diputación Provincial,* the collection of all its claims, and the liquidation of all its debts.

"16. The said Pious School Fathers continued in said building in which they had the high school under their charge after the occupation, and also continued to hold and conduct Divine worship in the said chapel. After some time had passed, the Reverend Pious School Fathers decided to leave this Island, and they turned the building of the school over to the military government of occupation, which, instead of permitting the Right Reverend Bishop of the Diocese to appoint other priests to continue the Divine worship in said church or chapel, occupied it and ordered the removal of the ornaments, sacred vessels, and other objects pertaining to worship, and closed it. Said building continues in the same situation since that time, in a complete state of abandonment, without being repaired or cared for, and suffering from the inclemencies of the weather, which have now reduced it to a lamentable condition of deterioration, and it threatens to become a total ruin.

"17. The property and building of the former *Diputación Provincial* of Porto Rico have passed to The People of Porto Rico, which holds and occupies, by virtue of law, all the buildings which formerly belonged to said corporation, including those above mentioned. The principal building formerly occupied by the College of San Ignacio is now devoted to a boys' charity school, and the chapel referred to is in the complete state of abandonment above indicated.

"18. The People of Porto Rico, through their legitimate representative, have heretofore refused to recognize the right of the Roman Catholic Apostolic Church in Porto Rico to use the said church or chapel in perpetuity, for the purpose of Catholic worship in compliance with the aforesaid resolutions of August 27 and November 2, 1886, passed by the *Diputación Provincial* of Porto Rico."

And after making such other allegations as he deemed necessary to show the legal capacity of the Roman Catholic Apostolic Church in Porto Rico to appear in court and acquire property and rights of all kinds, under the protection of the former laws in force in this Island and the Treaty of Paris, he closed with a prayer to this Supreme Court that judgment be rendered definitely holding and deciding:

"1. That The People of Porto Rico, in occupying and appropriating the property belonging to the *Diputación Provincial* of Porto Rico, including the church or chapel of Santurce above referred to, must acknowledge and accept the juridical condition, limitation or charge constituted upon this chapel in favor of the Roman Catholic Apostolic Church, in compliance with the will and grant made by the legitimate owner thereof, the *Diputación Provincial* of Porto Rico.

"2. That The People of Porto Rico is under obligation to respect and comply with said resolutions of August 27 and November 2, 1886, passed by the *Diputación Provincial* of Porto Rico, whereby the Roman Catholic Apostolic Church in Porto Rico is granted the right to use the said chapel of Santurce, to consecrate and devote it without limitation as to time, or perpetually, to Catholic worship; and,

"3. That in compliance with these resolutions The People of Porto Rico should return and deliver, and that it be ordered to return and deliver at once the said chapel of Santurce to the Roman Catholic Apostolic Church in Porto Rico, and, as its representative, to the Right Reverend Diocesan Bishop thereof, in order that it may continue to be devoted and consecrated to Catholic worship, as it formerly had been; with the taxation of the costs against the defendant if it should oppose this action."

The facts which serve as a basis for the amended complaint, the greater part of which we have inserted, are exactly the same which served as a basis for the original complaint,

without any difference between them other than that the former prayed for a declaration that the Roman Catholic Apostolic Church was entitled to the perpetual usufruct under a gratuitous title and for the purposes of Catholic worship, of the church or chapel in question, with the entrances and outlets necessary for the exercise of such rights of usufruct; while in the amended complaint what is demanded is the right of perpetual use of said chapel for purposes of Catholic worship; but the facts alleged in both complaints are exactly the same.

The People of Porto Rico demurred to this complaint on the ground that it does not state facts sufficient to constitute a cause of action; but the demurrer having been overruled by this Supreme Court, The People of Porto Rico made answer to the complaint, contesting it, and denying that the *Diputación Provincial* had granted the Catholic Bishop of Porto Rico either the right of perpetual use, or the right of usufruct in the chapel referred to; and praying, consequently, that the complaint be dismissed, with the costs and expenses against the plaintiff.

Upon the day set for the trial both parties appeared and presented their evidence, which was admitted and is specified in the minutes.

Having set forth the facts in the case, let us now enter upon an examination of the legal question raised in the complaint by the representative of the bishop, which is reduced to determining whether, in view of the conditions of the grant of the chapel in question made to such ecclesiastical authority by the *Diputación Provincial* of Porto Rico, such grant does or does not imply the grant of the right of perpetual use of said chapel for the purpose of Catholic worship, as alleged in the complaint, by the representative of the bishop.

We are of opinion that it does not; nay, more, we think that the terms of the grant and the action exercised in the complaint are absolutely incompatible. We have seen that what is sought in the latter is a declaration that the Roman Catho-

lic Apostolic Church in Porto Rico, is entitled to the perpetual right of use of the church or chapel in question for purposes of Catholic worship; and the right of use under the laws in force prior to the Civil Code which governed when the grant of the chapel was made to the Right Reverend Bishop of the Diocese, constituted a lien, a servitude imposed upon a thing belonging to another, for the benefit of a particular person, in order that he might make use thereof or collect sufficient fruits therefrom to provide for his needs and those of his family, and which while it existed deprived the owner of the thing encumbered by the servitude from the free exercise of the rights of ownership.

This is what then constituted, and still constitutes, the right of use; for notwithstanding the fact that the former Civil Code, differing from the laws of the *partidas,* did not give it the character of a servitude, although it did give it the character of a property right imposed upon a thing belonging to another, section 537 of the Revised Civil Code has restored the old law upon this point and included the right of use with that of usufruct and habitation, among the personal servitudes which are extinguished by the death of the person for whose benefit they are constituted.

Now then, was this the right of use granted by the *Diputación Provincial* to the Bishop of Porto Rico in granting him the chapel in question for consecration to public worship of the Catholic religion?

Section 526 of the Civil Code, which accords with article 521 of the former Code, provides that the rights and obligations of a person having the use of a thing, and of the one who has the right of occupancy, shall be governed by the deed constituting such rights, and in default of them, by the following sections of the Civil Code.

The title constituting the servitude in this case consists of the resolution of the provincial committee and associates and of the *Diputación Provincial* in full, which, taken from the

respective books of minutes which were introduced in evidence at the trial by the representative of the bishop, we wish to transcribe herewith in full, notwithstanding the fact that they have also been inserted in the complaint.

The first, namely, that of the provincial committee and associates, of August 27, 1886, reads as follows:

"The motion of Pablo Ubarri proposing that the Right Reverend Diocesan Bishop be requested to establish a chapel of ease in the one next to the building occupied by the College of San Ignacio of Santurce was considered. Mr. Ubarri stated that said prelate had agreed to the foundation of said chapel of ease, and that while the proceedings which had to be instituted for the purpose were pending he would appoint a priest to said chapel, the residents of the *barrio* of Santurce to pay the emoluments by subscription, which had already been started in a favorable manner. The provincial committee and associates, taking into consideration the statement made by Mr. Ubarri, resolved to approve the motion: That the chapel be devoted to Divine worship, this *diputación* to retain *all* its rights, and especially those of ownership, possession and usufruct, the powers vested in it, and those derived from the aforesaid right, which shall at no time be impaired by the concession this day made to the bishop of this diocese."

The second—that is to say, the resolution of the *Diputación Provincial* in full passed on November 2 of the same year, reads as follows:

"The proceedings relating to the foundation of a chapel of ease in the chapel next to the building which was occupied by the College of San Ignacio of Santurce was considered. The resolution of the committee and associates of August 27 last, agreeing that the said chapel be devoted to Divine worship, but with a reservation that this *diputación* was to retain *all of its rights,* and especially those of ownership, possession and usufruct, the powers vested in it and those derived from aforesaid rights, was read, as was a communication from the Right Reverend Diocesan Bishop, to the effect that, according to Spanish ecclesiastical discipline, said chapel could not be devoted to public worship with the reservation of the rights made by the corporation. A number of the deputies spoke, and it was resolved to inform the Right Reverend Bishop that, as it was the wish of the

corporation that said chapel be devoted to public worship, and it being impossible, on the other hand, for it to waive such reservation of rights inasmuch as a building belonging to the province was concerned, without having any intention of devoting it to other uses, it would be highly pleased if the bishop, conciliating the interests and rights of the church with those of the *diputación,* would consecrate it to public worship.''

Now then, do these resolutions of the *Diputación Provincial* constitute a perfect and sufficient title to permit the bishop of the diocese to claim the perpetual use of the chapel in question? We think not.

The *Diputación Provincial,* in granting the bishop the use of the chapel for the foundation thereon of a chapel of ease devoted to public worship of the Catholic religion, expressly reserved *all* of its rights therein, especially those of ownership, usufruct and possession, and the powers derived from such rights, which should at no time be considered as impaired by the grant made to the bishop of the diocese; and this being so, it cannot be maintained that the perpetual use of the chapel in question was granted the bishop, because this right, as we have seen, constitutes a real servitude, a limitation upon the rights of ownership which the *Diputación Provincial* reserved in full and unimpaired; and there is an immense difference between a full and absolute ownership which the *diputación* desired to reserve, and did reserve, because it understood that it could not or should not encumber the property of the province entrusted to it, and a limited ownership, which would result were we to admit that said chapel was subject to a servitude of perpetual use.

We admit, as the learned counsel for the bishop alleges in one of his writings, that ''the personal servitude of use is always understood to be without prejudice to the rights of ownership, possession and usufruct, as the use of a thing is not opposed to the right of ownership and possession on the part of its owner; and the powers granted by law to a person having the right of use are less and much more restricted than

those granted a usufructuary;" but we cannot at all admit that a personal servitude of use, or any other, is compatible with the full ownership which the *Diputación Provincial* reserved in its resolution, because there is a profound contradiction between full or absolute ownership and ownership restricted or limited by servitude.

Full or absolute ownership, as defined by Esriche in his *"Diccionario Razonado de Legislación y Jurisprudencia,"* is "the power which a person has in a thing to alienate it independently of another, to collect all its fruits, and to exclude others from the use thereof;" and the owner of a thing encumbered by a servitude of use, whether temporary or perpetual, cannot exercise any of these rights, because as long as it subsists the owner cannot dispose of the thing encumbered and sell it freely or make use thereof for his own benefit and enjoyment, as he could do if it were not subject to said charge in favor of a third person.

In view, therefore, of the terms of the grant made by the former *Diputación Provincial* of Porto Rico to the bishop of the diocese of the church or chapel in question, we are of the opinion that although the use thereof was granted him that he might consecrate it to public worship of the Roman Catholic Apostolic religion, this was not done as a perpetual servitude of use, but as a grant revocable at any time at the will of the *Diputación Provincial,* which expressly reserved its powers so to do, although it protested that it was not then its intention to devote it to other uses and, consequently, that it does not vest in the bishop of the diocese any perfect right of servitude, or any other right in the chapel in question, to demand it of The People of Porto Rico, which possesses and enjoys it as the legitimate owner thereof.

And let it not be argued that the *Diputación Provincial* of Porto Rico having built the church or chapel of Santurce for a Catholic temple, and having informed the bishop that it would be highly pleased if he were to consecrate it to public worship, it is to be understood that it was the intention of the

*Diputación Provincial* to grant the chapel to the bishop for consecration to Catholic worship without the reservations contained in its resolution of November 2, which, on the other hand, would be incompatible with the consecration of the temple to Divine service, because after consecration the temple would be eliminated from the commerce of man and would not be susceptible to the right of ownership.

To this observation we must object, in the first place, that thus construed, the resolution of the *Diputación Provincial* would be in open opposition to the complaint, because what is sought therein is that the chapel be held to be subject to a servitude of perpetual use in favor of the Catholic Church, but the *diputación* reserving all its rights therein; in the second place, that the terms of the resolution of the *Diputación Provincial* being so clear and explicit there can be no doubt of its real meaning, which was none other than to grant the chapel to the bishop in order that he might devote it to public worship, but always with the reservation of rights contained in the resolution referred to, by which the *diputación* understood that the rights of the church could be perfectly conciliated with those of the *diputación;* and in the third and last place, that as it does not appear to be proved in any way whatsoever that the bishop had canonically consecrated the chapel in question to Divine worship, it is unnecessary to discuss the effects which according to the ancient canons of the Catholic Church and the old Spanish laws were produced by consecration, such consecration constituting a solemn religious ceremony which bishops alone could perform, and which, we repeat, does not appear to have taken place in this case. The only thing which appears upon this matter is that after the resolution of the *diputación* and after the bishop had taken possession of the chapel, the offices of the Catholic religion continued to be celebrated there as they had been celebrated since its construction, but not that the bishop had canonically consecrated it to Divine worship, nor even that he had founded therein the chapel of ease desired by the *Diputación Provin-*

*cial,* because it does not even appear that the proceedings instituted in the bishopric to this end were ever concluded, and in what manner it was done.

In view of these considerations and the other considerations above set forth, we are of the opinion that the complaint of the bishop, should be dismissed, with the costs against him.

*Dismissed.*

Justices MacLeary and Wolf concurred.

Justices Hernández and Figueras dissented.

DISSENTING OPINION OF JUSTICES HERNÁNDEZ AND FIGUERAS.

As to the facts set forth by the majority of the Justices of this Supreme Court we concur in the opinion upon which the judgment rendered December 15 of the year last past is based; but we are of the opinion that the resolution adopted by the *Diputación Provinçial* of this Island on November 2, 1886, ratifying the previous resolution of the provincial commission and associates of August 27 of the same year, constitutes the establishment of the right of servitude of use of the chapel involved in this suit, in favor of the Roman Catholic Apostolic Church in Porto Rico for the purpose of Divine worship, as alleged in the complaint.

Upon a careful examination of these resolutions we see that in the resolution adopted November 2, 1886, that, notwithstanding the rights reserved by the *Diputación Provincial* in the said chapel, it was not its intention to devote it to any use other than for public worship, and under this clause, which did not exist in the other resolution of the privincial commission and associates of the 27th of August of the same year, the *diputación* accepted the obligation, not to devote the chapel to any use other than Divine worship. Under this condition the chapel was destined by the Right Reverend Bishop of Porto Rico to Divine worship, and therefore the *Diputación Provincial,* and as its representative The People of Porto Rico,

cannot alter or leave without effect that condition which has constituted the servitude of use claimed by the plaintiff.

That condition not only refers to the date upon which the resolution of November 2, 1886, was adopted, inasmuch as the chapel, having been destined to public worship, it is clear that it could not be simultaneously destined to other uses, but it referred to future time, or what is the same thing, there was a stipulated condition not to destine the chapel in the future to any use other than to Divine worhip.

The reservation of rights contained in the two resolutions aforesaid is not incompatible with the existence of the servitude of use which the plaintiff claims to have in the chapel, because we agree with the majority of the Justices of this Supreme Court that such servitude is understood to be without prejudice to the rights of ownership, possession, and usufruct, inasmuch as the use of the thing is not incompatible with the right of ownership or possession on the part of its owner, and the powers granted by law to the user are less and much more restricted than those granted to the usufructuary; but we further maintain that although the *Diputación Provincial,* in the present case, reserved in the chapel all of its rights, and particularly the rights of ownership, possession and usufruct, its own powers and those emanating therefrom, such full reservation of its rights cannot be held to include the right to use the chapel for any purpose at its election, because it clearly stated that it was not its intention to devote it to any use or uses other than Divine worship.

This is supported by the rules of construction, which require that the words of any act or contract must be understood in such a sense as to produce some result, and where the words appear to be contradictory to the evident intention of the parties, the intention will prevail. If the *Diputación Provincial* reserved the right to use the chapel for purposes other than Divine worship, the words, that it was not its intention to do so, mean nothing and, therefore, would produce no result

whatever. If there is any incompatibility between the full re-
servation of its rights in the chapel by the *Diputación Provin-
cial* and the servitude of use herein involved, such incompati-
bility must be harmonized in a sense favorable to the intention
of the *Diputación Provincial* that the chapel should be conse-
crated to public worship, and that it should not be dedicated
to any other use.

Furthermore, the very acts of the *Diputación Provincial*
itself, in regard to the chapel in controversy, if there could
be any doubt as to its intention expressed in the resolutions,
upon the construction of which depends the decision of the
present judicial controversy, support the contention of the
plaintiff. The construction of the chapel was such that it
could be used only for the purpose of Divine worship; the
Fathers of the Order of Jesus contributed with their own
means for the construction of the chapel; the *Diputación Pro-
vincial* excluded it from the contract of lease when it leased
the adjacent building to the Compañía de los Ferrocarriles de
Puerto Rico; and finally, that chapel has never been used for
any purpose other than for Catholic worship.

For the reasons above set forth, we are of the opinion that
the Roman Catholic Apostolic Church in Porto Rico, and in its
representation the plaintiff must be acknowledged to have the
right to the perpetual use of the chapel in Santurce, for the
purposes of holding Catholic worship therein, and the com-
plaint should be sustained, with the costs against the de-
fendant.